IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JONATHAN EDWARD DREW,<br>a/k/a "Jon Drew,"<br><br>Defendant. | Case No. 1:21-cr-71<br><br>The Honorable Anthony J. Trenga<br><br>Hearing: August 25, 2021 |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its undersigned counsel, in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission Guidelines Manual ("Guidelines" or "U.S.S.G."), hereby submits its position with respect to sentencing of Jonathan Edward Drew, also known as "Jon Drew," ("the defendant"). The defendant comes before the Court for sentencing after pleading guilty to one count of bank fraud, in violation of Title 18, United States Code, Section 1344, and one count of aggravated identity theft, in violation of Title 18, United States Code, Section 1028A. The United States has no objection to the Probation Officer's calculations of the defendant's Sentencing Guidelines range of 63 to 78 months' incarceration for Count 1, as set forth in the Presentence Investigation Report ("PSR"). *See* ECF No. 57, at 29. Count 2 carries a two-year mandatory minimum, to be served consecutively. *Id.*

For the reasons set forth herein, the United States respectfully submits that a total sentence of 87 to 90 months—consisting of 63 to 66 months (toward the low end of the Guidelines range) as to Count One and 24 months (the mandatory minimum) as to Count Two—would be reasonable and appropriate in consideration of the factors set forth in 18 U.S.C. § 3553(a).

## I. BACKGROUND

This case initially arose from an investigation into ongoing mail theft in the Eastern District of Virginia. PSR, ECF No. 57, ¶ 20–21. Law enforcement traced the thefts to the defendant, that his payments to his apartment complex had been declined and reversed, that the defendant had counterfeited checks, and that the defendant had entered a lease at a different apartment complex in the name of one of his victims. *Id.* ¶ 21–24. On March 26, 2020, the defendant's new residence was searched, he was arrested, and then he was released on bond. *Id.* ¶ 25. Just two months later, however, the defendant resumed stealing mail, counterfeiting checks, and stealing identities. *Id.* ¶ 26. On August 3, 2020, the defendant's residence was again searched, and investigators found laminated charts containing the personal identifying information of numerous victims, in addition to counterfeiting materials, stolen mail, and fraudulent business incorporation documents. *Id.* ¶ 39, 43. Shortly after, the defendant was arrested and released on bond once more. *Id.* ¶ 30. One month later, law enforcement again discovered the defendant stealing mail. *Id.* ¶ 31.

The defendant was subsequently charged in this district on November 5, 2020, was arrested, and was remanded to the custody of the United States Marshals Service on November 10, 2020. ECF No. 1, 7. On April 14, 2021, the defendant appeared before the Court and pled guilty pursuant to a Criminal Information to one count of bank fraud, in violation of Title 18, United States Code, Section 1344, and one count of aggravated identity theft, in violation of Title 18, United States Code, Section 1028A. *See* ECF No. 51.

As set forth in the agreed Statement of Facts ("SOF") and the PSR, the defendant was highly organized in the execution of his scheme. He acquired the personal identification information of more than 150 individuals in the Eastern District of Virginia. SOF, ECF No. 54,

¶ 6. That information in part was kept in laminated charts with individuals' names, bank account information, various email address, and phone numbers. *Id.* ¶ 9. The defendant created fraudulent entities and paperwork to support his scheme, including email addresses, business incorporation papers, and identity cards. *See* PSR, ECF No. 57, ¶ 29 (referring to the incorporation papers and identity cards).

The defendant's crimes did not merely cause financial harm. His actions resulted in significant collateral damage and emotional distress to the victims whose mail and identities were stolen. As described by victims A.K. and M.K. in their victim impact statement, the identity theft and fraud perpetrated by the defendant caused an "unbelievably high" level of stress on them and their family, and the "emotional damage" of his crimes "cannot be calculated." The defendant stole irreplaceable family history documents from victim M.C.'s mailbox—keepsakes she described as having "significant sentimental value for [her] and [her] family." Even after the defendant's arrest and conviction, his victims still worry about the future implications his actions will have.

## II. GUIDELINES CALCULATION

Although the Supreme Court rendered the federal Sentencing Guidelines advisory in *United States v. Booker*, it held that a sentencing court must "consult [the] Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); s*ee also United States v. Clark*, 434 F.3d 684, 685 (4th Cir. 2006). The Supreme Court has directed district courts to "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). The "Guidelines should be the starting point and the initial

3

benchmark," but the sentencing court must also "consider all of the [18 U.S.C.] § 3553(a) factors" in determining the appropriate sentence. *Id.* at 49–50; *see also Clark*, 434 F.3d at 685.

The defendant has one criminal history point stemming from his state criminal conviction, which places him in a criminal history category of I. *See* U.S.S.G. § 4A1.1(c). For the reasons stated below, the U.S. Probation Office properly calculated the total offense level with respect to Count One at 29 (before the 3-level reduction for acceptance of responsibility). The defendant's total offense level of 26 and criminal history category I yields an advisory Guidelines range of 63 to 78 months' incarceration.

With respect to Count Two of the Criminal Information, charging the defendant with aggravated identity theft, the Guidelines defer to the statutory mandatory minimum term of imprisonment, under which 18 U.S.C. § 1028A provides that the defendant must "be sentenced to a term of imprisonment of 2 years" to run consecutively to any sentence imposed on Count One of the Information. 18 U.S.C. §§ 1028A(a)(1), 1028A(b)(2).

### A.  The Base Offense Level and Loss Amount

The U.S. Probation Office correctly found that the total loss was over $250,000 but less than $550,000, and therefore applied a 12-level enhancement on top of the base offense level of 7, under U.S.S.G. § 2B1.1(b)(1)(G). U.S.S.G. § 2B1.1(a); PSR, ECF No. 57, ¶ 58. The amount of loss is to be determined by a preponderance of the evidence. *United States v. Miller*, 316 F.3d 495, 503 (4th Cir. 2003). The Court may consider relevant information "without regard to its admissibility under the rules of evidence applicable at trial" for sentencing purposes. U.S.S.G. § 6A1.3(a). The Application Notes for § 2B1.1 state unequivocally that, in determining loss under § 2B1.1(b)(1), "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, cmt. 3(A).

4

Intended loss "includes intended pecuniary harm that would have been impossible or unlikely to occur." *Id.*, cmt. 3(A)(ii); *Miller*, 316 F.3d at 498–503 (rejecting "likely or possible" test). The Court need only make a reasonable estimate of loss. 18 U.S.C. § 3742 (e) and (f); USSG § 2B1.1, cmt. 3(C).

The defendant objects to the loss amount related to a number of checks on the grounds that either he does not recognize those checks or they were not used by him. The first reason is no excuse: just because the defendant does not remember counterfeiting or using a check does not mean that he never did so. Second, the defendant gave checks to related defendants like Brandon Hestand Dow ("DOW"). In an interview with law enforcement, the defendant advised that he knew DOW had the ability to alter checks. Thus, he could have reasonably foreseen that if he gave a stolen check to DOW, DOW might well alter and deposit that check. *See* U.S.S.G. § 1B1.3 cmt. 4(C)(i) (illustrating conduct for which a defendant would be responsible in a check forgery context). As such, the defendant should be held accountable for the full loss amount.

The United States would also reiterate its proffer of what the evidence would be regarding the disputed loss amount. *See* PSR, ECF No. 57, at 36–39.

### B.     Ten or More Victims

This enhancement is not in contention: the defendant acquired the personal identification information of more than 150 individuals, so the two-level enhancement for ten or more victims clearly applies under §2B1.1(b)(2)(A)(i). PSR, ECF No. 57, ¶ 6, 40.

### C.     Sophisticated Means

The Probation Officer is correct that the defendant used sophisticated means to perpetuate his scheme. As such, the two-level enhancement under U.S.S.G. § 2B1.1(b)(10)(C) is appropriate.

The defendant's scheme operated with the type of multilayered sophistication that the Fourth Circuit has found to satisfy the sophistication enhancement. *See United States v. Davis*, No. 18-4080, 2018 WL 5096070, at *1 (4th Cir. Oct. 18, 2018) (unpublished) (affirming application of the sophisticated means enhancement applies where the defendant created a "multilayered scheme"). "The enhancement requires some means of execution that separates the offense from the ordinary or generic." *United States v. Jinwright*, 683 F.3d. 471, 486 (4th Cir. 2012) (tax case). "On the other hand, a defendant need not utilize the most complex means possible to conceal his fraudulent activities in order for the court to find that he used sophisticated means." *Id*. (internal citations omitted). In cases where a defendant not only presents false documents and false representations, but also "provided back-up documentation," such "painstaking attempt[s]" constitute sophisticated means. *United States v. Okolo*, 82 Fed. App'x 834, 836–837 (4th Cir. 2018) (unpublished).

Here, the defendant's conduct extended far beyond the misrepresentation inherent in typical bank fraud cases. The use of a false name and checks to obtain funds constitutes the minimum conduct for a bank fraud offense. *United States v. Archuletta*, 231 F.3d 682, 685–86 (10th Cir. 2000). The defendant went far beyond that minimum conduct: he admitted he opened bank accounts in his victims' names, claimed one of the fraudulent accounts as his "business account," and created fake business incorporation documents. *See* PSR ¶¶ 25, 28, 29. Moreover, he created myriad email accounts for his victims, as well as a fake W-9 to request a taxpayer identification number.

The defendant's sophisticated means are exemplified in the level of effort exerted in counterfeiting and depositing checks stolen from Victims A.K. and M.K. A.K. and M.K. reported

6

to police that a check forged by the defendant lists an office address in the name of M.K.'s company on Plaza America Drive. Victim A.K. went to that office address, where a receptionist verified that the company held space there. The defendant does not dispute that this check is attributable to him. PSR, ECF No. 57, at 34. In correspondence with Azlo, where the defendant attempted to open a fraudulent bank account in M.K.'s name, the defendant uses the email address "mktechnologies80@gmail.com," an email present on one of the charts located in the defendant's residence. In that correspondence, the defendant asks Azlo to send a debit card to his "office address" on Plaza America Drive. Finally, a video was discovered by investigators depicting an unindicted co-conspirator standing outside of the homes of victims A.K. and M.K, claiming to be M.K. to verify the opening of a bank account at Azlo, in response to Azlo's request for video verification. It took time, effort, and ingenuity for the defendant to create an email, arrange an office address, and have a co-conspirator create a video. These actions—all intended to prop up the fake identities that the defendant had created—are the kind of "backup documentation" that makes his crime sophisticated. *See Okolo*, 82 Fed. App'x 837 (finding that defendant's submission of one falsified pay stub along with a credit application constituted sufficient backup documentation to establish sophisticated means).

      **D.**    **Device-Making Equipment**

The Probation Officer correctly applied a two-level enhancement under U.S.S.G. § 2B1.1(b)(10)(A)(i) for the defendant's possession or use of device-making equipment.

Device-making equipment is "any equipment, mechanism, or impression designed or primarily used for making an access device or a counterfeit access device." 18 U.S.C. § 1029(e)(6).

Pursuant to a search warrant executed at the defendant's residence, investigators found a specialized Scotch Thermal Laminator printer, plastic "blanks" with what appear to be magnetic strips, and a shelf containing some of these materials that was labeled "ID Card Marker / CC Reader/writer / RIFD maker."[1]

### E.   Conduct Described in 18 U.S.C. § 1040

This enhancement is not in contention: as indicated in the SOF, the defendant possessed one stolen and six counterfeit Economic Impact Payment ("EIP") checks, commonly known as COVID-19 stimulus payments, and negotiated the authentic EIP check issued to him twice. SOF, ECF No. 53, ¶ 9–10. As such, the two-level enhancement for the offense involving conduct described in 18 U.S.C. § 1040 clearly applies under §2B1.1(b)(12). PSR, ECF No. 57, ¶ 6, 43–44.

### F.   The Defendant's Leadership Role in the Offense

The Probation Officer is correct that the defendant was an organizer, leader, manager, or supervisor. Accordingly, he appropriately applied a two-level enhancement under § 2B1.1(b)(10)(C). PSR, ECF No. 57, ¶ 53, 65.

The defendant qualifies for the two-level enhancement because he was an "organizer, leader, manager, or supervisor in . . . criminal activity." U.S.S.G. § 3B1.1(c). In determining a defendant's leadership role, "a district court should consider whether the defendant exercised decision making authority for the venture, whether he recruited others to participate in the crime, whether he took part in planning or organizing the offense, and the degree of control and authority that he exercised over others." *United States v. Rashwan,* 328 F.3d 160, 166 (4th Cir.

---

[1] Undersigned counsel would note that "RIFD" might be a misspelling of "RFID," referring to the radio frequency identification technology that enables credit cards to be "contactless."

8

2003). "Leadership over only one other participant is sufficient as long as there is some control exercised." *Id*.

As referenced in section II.C, Sophisticated Means, investigators discovered a video of an unindicted co-conspirator standing in front of the home of victims A.K. and M.K. The video is clearly taken by another person, and it was discovered on the defendant's phone. Investigators also discovered correspondence between Azlo bank and the defendant, in the guise of M.K., using the address "mktechnologies80@gmail.com"—an email address that appears on charts found in his residence. Azlo bank requested a video verification showing the account owner standing in front of the owner's business or residence, and with the account owner stating his or her name, address, and name of business. The "mktechnologies80@gmail.com" account responded, stating that the person was attaching the requested documents—presumably the video of the unindicted co-conspirator. There is every indication that it was the defendant who directed the unindicted co-conspirator to act in the video as victim M. K. The defendant would have gained from doing so: he had already deposited several checks into the Azlo account (checks which he does not dispute, *see* PSR, ECF No. 57, at 34). Furthermore, some of the unindicted co-conspirator's personal effects were found in the defendant's residence.

Beyond his direction of the unindicted co-conspirator's role in the video, the defendant also was a leader with respect to DOW. In an interview with law enforcement, the defendant stated that he had provided a check to DOW. The defendant also stated that he drove DOW to cash what DOW had described was a "big check." In a separate interview with law enforcement, DOW stated that the defendant had given DOW a check to give to another individual, T.T. DOW also stated that he had learned to commit fraud from the defendant. That claim is corroborated by

9

messages between the defendant and DOW that were discovered by investigators. One message indicated that DOW borrowed equipment used to commit his offenses (such as a laminator and cutter) from the defendant. Another series of messages indicate the defendant taught DOW about fraud detection techniques:

- On or about July 7, 2020, DOW complained that he had tried to cash a check at Walmart and failed.

- On or about July 10, 2020, DOW asked the defendant: "which Walmart did you say was like the main financial Walmart, one that trains people and has money center . . ."

- After some discussion, on or about July 11, 2020, the defendant responded: "again with the half truths lol… I never singled out a Walmart… I just relayed what I read about there [sic] money counter procedures and how they train the associates who work it. . . ."

### G. Acceptance of Responsibility

The United States concurs with the Probation Officer's application of the two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and in accordance with the plea agreement, hereby moves for the additional one-point reduction under U.S.S.G. § 3E1.1(b), resulting in a total offense level of 26.

## III. IMPOSITION OF SENTENCE

Pursuant to 18 U.S.C. § 3553(a), the Court should consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to, among other things, reflect the seriousness of the offense and adequately deter criminal conduct; (3) the kinds of sentences available; (4) the Sentencing Guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted

sentence disparities among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. Ultimately, the sentence imposed must meet a standard of reasonableness. *See Booker*, 543 U.S. at 260–61. Based on these factors, a significant sentence of imprisonment would be appropriate in this case.

### A. The Nature and Circumstances of the Offense

As noted above, the defendant's scheme was an organized and extended effort to defraud financial institutions using the personal identification information of his victims. The defendant acquired over 150 individuals' information. He organized some of that information neatly into charts, keeping track of victim's names, addresses, and social security numbers along with the bank accounts he had opened in their name and the fraudulent email addresses he had created. During the execution of the offenses, the defendant had no concern for either the emotional harm and distress he caused his identity theft victims, or the financial harm inflicted on both the institutions he defrauded and the individuals he stole checks and credit cards from. The circumstances of the crime therefore call for a significant sentence.

### B. The Defendant's History and Characteristics and the Need for Specific Deterrence and Protection of the Public

The history and characteristics of the defendant support a within-Guidelines sentence. Though the defendant only has one criminal history category point, he does have earlier, prior convictions for similar offenses, such as his 2004 conviction for issuing bad checks, for which he was sentenced to three years' supervised probation. PSR, ECF No. 57, ¶ 93. The defendant then violated his probation by incurring a new conviction, testing positive for marijuana, and failing to pay his restitution. *Id.* In this case, he was twice arrested and released on bond. Each time he was released in this case, he re-offended with the exact same conduct within a month or two. The

11

arrests, interviews with law enforcement, and seizure of the fruits and instrumentalities of his crimes all did not serve to deter him from immediately committing new offenses within short timespans. A significant sentence would be necessary to instill the respect for the law that appears to be lacking in this defendant, and a below-Guidelines sentence would thus be inapposite to the goals of both specifically deterring this defendant and generally deterring others.

## III. CONCLUSION

Based on the 18 U.S.C. § 3553(a) factors, and the Guidelines range of 63 to 78 months' incarceration as to Count One, the United States respectfully requests that the Court impose a sentence of at least 87 months of imprisonment, restitution in the amount of $56,543.63, a money order of forfeiture in the same amount,[2] and a term of supervised release.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By: /s/

Olivia Zhu
Special Assistant United States Attorney
Tony R. Roberts
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3947
Facsimile: (703) 299-3980
Email: Olivia.Zhu2@usdoj.gov

---

[2] The defendant agreed to forfeiture and restitution as part of his plea agreement. Moreover, forfeiture and restitution are both mandatory in this case. The United States intends to present to the Court consent orders of forfeiture and restitution in advance of the sentencing hearing, assuming the parties can reach agreement. The United States will ask that the Court enter those orders as part of its judgment at sentencing.

12

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2021, I caused a copy of the foregoing memorandum to be filed with the Clerk of Court using the CM/ECF system, which will automatically generate a Notice of Electronic Filing (NEF) to all counsel of record.

A copy has also been sent via email to:

Kenneth G. Orsino
United States Probation Officer
kenneth_orsino@vaep.uscourts.gov

/s/
Olivia Zhu
Special Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3947
Facsimile: (703) 299-3980
Email: Olivia.Zhu2@usdoj.gov